[J-32-2018] [MO: Mundy, J.]

**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | | |
|---|---|---|---|
| C.G., | | : | No. 2 MAP 2018 |
| | | : | |
| | Appellant | : | Appeal from the Order of the Superior |
| | | : | Court at No. 1733 MDA 2016 dated |
| | | : | October 11, 2017 Affirming the Order |
| | v. | : | of the Centre County Court of |
| | | : | Common Pleas, Civil Division, at No. |
| | | : | 2015-4710 dated September 22, |
| J. H., | | : | 2016. |
| | | : | |
| | Appellee | : | ARGUED: May 15, 2018 |

## CONCURRING OPINION

**JUSTICE DOUGHERTY**                    **DECIDED: September 21, 2018**

The trial court's credibility findings in this case compel the conclusion C.G. lacks standing to seek custody of Child. But in my respectful view, nothing warrants, much less necessitates, the majority's cramped interpretation of "parent" under 23 Pa.C.S. §5324(1), the inevitable result of which will be the continued infliction of disproportionate hardship on the growing number of nontraditional families — particularly those of same-sex couples — across the Commonwealth. I therefore concur in the result only.

According to the majority, our precedent supports a conclusion parentage for standing purposes may be proven in only four ways: biology, adoption, a presumption attendant to marriage, or "legal parentage by contract — where a child is born with the assistance of a donor who relinquishes parental rights and/or a non-biologically related person assumes legal parentage[.]" Majority Opinion, slip op. at 21. Unfortunately, even under this paradigm of parentage, it remains impossible — absent marriage or adoption — for both partners of a same-sex couple to have standing as a parent, as only one can

be biologically related to the child or contract to assume legal parentage. I see no good reason why the Court should continue to impose such an overly-restrictive formulation, which fails to take into account equitable principles and may ultimately frustrate the paramount concern of protecting a child's best interests. *See* Douglas NeJaime, *The Nature of Parenthood*, 126 Yale L.J. 2260, 2289 (2017) ("[E]ven as principles of gender and sexual-orientation equality have animated shifts in parental recognition, parentage law continues to draw distinctions that carry forward legacies of inequality embedded in frameworks forged in earlier eras.").

The majority correctly observes the reality that what comprises a family is an evolving concept. *See* Majority Opinion, slip op. at 15, *citing Troxel v. Granville*, 530 U.S. 57, 63 (2000) ("The demographic changes of the past century make it difficult to speak of an average American family. The composition of families varies greatly from household to household."); *J.A.L. v. E.P.H.*, 682 A.2d 1314, 1320 (Pa. Super. 1996) ("In today's society, where increased mobility, changes in social mores and increased individual freedom have created a wide spectrum of arrangements filling the role of the traditional nuclear family, flexibility in the application of standing principles is required in order to adapt those principles to the interests of each particular child."). Yet despite recognizing the diverse range of parental configurations that now exist, the majority interprets our case law in a manner that continues to primarily tether parentage to traditional notions of biology and adoption. There is a very real and grave risk to this approach, to children and putative parents alike. *See Brooke S.B. v. Eizabeth A.C.C.*, 61 N.E.3d 488, 499 (N.Y. 2016) ("A growing body of social science reveals the trauma children suffer as a result of separation from a primary attachment figure — such as a de facto parent — regardless of that figure's biological or adoptive ties to the children[.]") (collecting sources); NeJaime, 126 Yale L.J. at 2322 ("The harms of nonrecognition are not only practical but expressive.

Courts routinely term those who serve as parents but lack biological ties "nonparents" — casting them as third parties who are otherwise strangers to the family.").[1]

Cognizant of these potential harms, I would not interpret our case law so narrowly. Instead, I believe there is room in our precedent — particularly in the absence of any guidance from the legislature — to conclude an individual who lacks biological, adoptive, or marital ties may nevertheless establish standing as a parent to seek custody under 23 Pa.C.S. §5324(1). *See Sinnott v. Peck*, 180 A.3d 560, 573 (Vt. 2017) ("[T]he Legislature's inaction to date is not an impediment to our own obligation to resolve the specific cases before us by developing a consistent and coherent approach to defining parenthood within the construct that the Legislature has given us and our prior case law; in fact, it creates a more urgent need for us to act."). Such is certainly the trend in other states. *See id.* at 569-72 (detailing cases that "reinforce the modern trend" of analyzing non-biological, non-adoptive, and non-marital parenthood by "focusing on the parties' agreement and intentions at the time they brought a child into their home"); NeJaime, 126 Yale L.J. at 2260 (explaining "the law increasingly . . . recognizes parents on not only biological but also social grounds" and offering comprehensive analysis of legal trends).

In line with this trend in other jurisdictions, C.G. asks this Court "to clarify that parentage may not only be determined by biology or adoption, but also by the intent of parties who create a child together using assisted reproductive technology, and then co-parent that child together." C.G.'s Brief at 21. In her view, parentage "turns on whether

---

[1] I do not intend to minimize the significant and fundamental right of biological or adoptive parents to control the upbringing of their children. As the majority properly appreciates, the interest of parents in the care, custody, and control of their children "is perhaps the oldest [of the] fundamental liberty interest[s.]" Majority Opinion, slip op. at 11, *quoting Troxel*, 530 U.S. at 65. This fundamental right necessarily militates caution in expanding the category of those who may be identified as a "parent." However, in my respectful view, the law need not deny the salience of biological or adoptive bonds to recognize the validity of additional indicia of parenthood.

the party in question had agreed to the conception of the child and whether that party had intended to parent the child following the child's birth." *Id.* at 34. Justice Wecht would similarly "embrace an intent-based test for parentage for persons pursuing parentage through" assisted reproductive technology. Concurring Opinion, slip op. at 7 (Wecht, J.).

In my view, it is unnecessary at this juncture to endorse any particular new test for establishing standing as a parent. As noted, the nature of the family in the modern era continues to evolve, and the various alternative tests proffered above, as well as the tests adopted by other jurisdictions, strongly suggest there may not be a one-size-fits-all approach to adequately address each unique familial situation. *See Brooke S.B.*, 61 N.E.3d at 500-01 (rejecting premise it must "declare that one test would be appropriate for all situations" and thus declining to decide whether, in a case where a biological or adoptive parent consented to the creation of a parent-like-relationship between his or her partner and child after conception, the partner would have standing).

In any event, I am constrained to agree with the majority that "the trial court found as fact that the parties did not mutually intend to conceive and raise a child, and the parties did not jointly participate in the process." Majority Opinion, slip op. at 21 n.11. Those findings — which this Court is bound to accept, no matter how seemingly harsh their effect — preclude a holding that C.G. has standing as a parent under any of the proffered definitions of intent-based parentage. Accordingly, I agree that C.G. is not entitled to the relief she seeks, and we must await another case with different facts before we may properly consider the invitation to expand the definition of "parent" under 23 Pa.C.S. §5324(1).[2]

_____

[2] Parenthetically, I note my agreement with the majority that the bond between a third party and a child is not dispositive of *in loco parentis* standing. Furthermore, with regard to the issue of post-separation conduct, I agree "the relevant time frame to determine whether a party stands in loco parentis is when the party developed the relationship with the child with the acquiescence or encouragement of the natural parent." Majority

Opinion, slip op. at 31. I depart from the majority, however, to the extent it implies post-separation conduct can be used **against** a party seeking *in loco parentis* status. *See, e.g.*, *Liebner v. Simcox*, 834 A.2d 606, 611 (Pa. Super. 2003) (rejecting argument "that once *in loco parentis* status has been obtained, it can be lost" due to post-separation conduct); *J.A.L.*, 682 A.2d at 1322 (considering post-separation conduct only to "reinforce" finding third party stood *in loco parentis*).